## A99A0912. GILL v. POE & BROWN OF GEORGIA, INC.
### (524 SE2d 328)

BARNES, Judge.

Poe & Brown of Georgia, Inc. ("Poe & Brown") sued Bobby Gregg Gill for an injunction and damages, claiming that Gill violated a non-solicitation agreement. Poe & Brown moved for partial summary judgment in its favor on the issue of whether the non-solicitation agreement was enforceable; Gill opposed the motion and also moved for summary judgment in his favor. The trial court granted Poe & Brown's motion and denied Gill's motion. Gill appeals, claiming the trial court erred because it (1) implicitly found that the non-solicitation agreement could be assigned to Poe & Brown without his consent, and (2) concluded that the non-solicitation agreement was reasonable and enforceable as a matter of law. Because we find the non-solicitation agreement was an unreasonable partial restraint of trade, we reverse.

On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998). Viewed in this light, the record shows that Poe & Brown purchased all of the assets of B & R International, Inc. (B & R) relating to its insurance brokerage business on April 17, 1996. B & R employed Gill as an insurance salesman and broker from 1985 through April 16, 1996, the day before the sale of its insurance business to Poe & Brown. This lawsuit relates to a non-solicitation agreement signed by Gill on March 2, 1992, during his employment with B & R.

The "Employee Confidentiality and Non-Solicitation Agreement" signed by Gill included the following relevant provisions:

> THIS AGREEMENT is made and entered into as of the 2nd day of March 1992, by and between B&R INTERNATIONAL, INC., a Georgia corporation (the "Company"), and BOBBY GREGG GILL ("Employee").
>
> WHEREAS, Employee has agreed to execute and deliver this Agreement pursuant to Section 1 (c) of the Stock Purchase Agreement and as part of the consideration for the obligations of the Company under the Stock Purchase Agreement;
>
> NOW, THEREFORE, for and in consideration of the continued employment of Employee by the Company, the obligations of the Company under the Stock Purchase Agreement, and other good and valuable consideration, the sufficiency of which are hereby acknowledged, the parties

hereto agree as follows:

1. *Definitions.* For purposes of this Agreement the following terms shall have the meanings specified below: . . .

(c) *"Employee's Customers"* — Those Customers listed on Schedule 1 to this Agreement, as amended from time to time, which is attached and made a part of this Agreement by reference, which are the Customers for whom Employee has been the principal contact, has supervised the principal contact, or to whom the Employee has sold or brokered insurance or whose insurance business Employee has actively solicited. As the Company acquires new Customers from time to time for whom Employee is the principal contact, supervises the principal contact, or to whom Employee sells insurance or whose insurance business Employee actively solicits on behalf of the Company, from time to time Employee will be asked to sign and agrees to sign an amendment to Schedule 1 adding such new Customers to Schedule 1.

(d) *"Employee Territory"* — The entire geographic area within the United States of America. The parties acknowledge that (i) Employee's Customers are and will be located throughout the United States of America, and (ii) the "Employee Territory" is defined in the foregoing manner for the purpose of complying with the requirement that all noncompetition covenants, in order to be enforceable under the laws of the State of Georgia, must, among other things, contain a territorial limitation.

2. *Covenants of Employee* . . .

(c) *Covenant Against Solicitation.* . . . Employee agrees that, for a period commencing on the date of this Agreement and continuing in effect for 18 months after the termination of Employee's employment with the Company, he will not, directly or indirectly, individually or on behalf of any Person other than the Company:

(i) solicit any of Employee's Customers located within the Employee Territory for the purpose of selling or brokering commercial property and casualty lines of insurance, including, without limitation, life insurance and employee benefits. . . .

When Poe & Brown purchased B & R's insurance brokerage business, all non-solicitation agreements and covenants not to compete signed by B & R employees were assigned to Poe & Brown, including the one signed by Gill. It is undisputed that Gill did not consent to this assignment and that the non-solicitation agreement itself neither authorizes nor prohibits unilateral assignment of the agree-

ment by B & R to a third party.

1. We find no merit in Gill's claim that the non-solicitation agreement could not be assigned without his consent. See *Swanson v. Kirby*, 98 Ga. 586, 594 (2) (26 SE 71) (1896); *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 375-376 (2) (a) (414 SE2d 513) (1991).

2. Gill asserts the non-solicitation agreement is unenforceable because it was unreasonable and overbroad. We must uphold a restrictive covenant in an employment contract "if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). To determine the reasonableness of restrictive covenants, "the courts have established a three-element test of duration, territorial coverage, and scope of prohibited activity." *Reardigan v. Shaw Indus.*, 238 Ga. App. 142, 143 (1) (518 SE2d 144) (1999).

In *W. R. Grace*, supra, the Supreme Court recognized that

> [r]equiring an express geographic territorial description in all cases is not in keeping with the reality of the modern business world in which an employee's territory knows no geographic bounds, as the technology of today permits an employee to service clients located throughout the country and the world.

Id. at 467. It then held that when the parameters of a restrictive covenant were

> as narrow as those set forth in the certified question, i.e., where the former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer, there is no need for a territorial restriction expressed in geographic terms.

(Footnote omitted.) Id. at 467-468.

Gill argues the covenant he signed does not fall within the scope of the Supreme Court's holding in *W. R. Grace* because it applies to customers who may have ended their relationship with his employer more than two years before his termination. We agree. The covenant at issue in *W. R. Grace* restricted the employee from soliciting customers contacted by the employee during the two-year period immediately before the conclusion of the employee's employment.

In this case, the covenant applies to customers on a list created over four years before Gill was terminated. Although the covenant provided that the list of Gill's customers could be amended, it is

undisputed that this was never done. The fact that Gill's employer had already lost the business of some of the customers on this list at the time of Gill's termination illustrates the problems created by a covenant that forbids an employee from soliciting a stagnant list of customers. Gill's employer had no legitimate business interest in preventing Gill's solicitation of former clients who may have severed their relationship with it up to four years before Gill's termination. As a result, the trial court erred when it found the covenant "was reasonable and enforceable" and granted Poe & Brown's motion for partial summary judgment on the issue of liability. See *Smith Adcock & Co. v. Rosenbohm*, 238 Ga. App. 281, 284-285 (518 SE2d 708) (1999) (finding similar covenant, applying to all "former company clients," was "an unreasonable partial restraint of trade"). For these reasons, the trial court also erred when it denied Gill's motion for summary judgment, and it is hereby directed to enter summary judgment in Gill's favor.

*Judgment reversed with direction. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 3, 1999 —
RECONSIDERATION DENIED DECEMBER 17, 1999 — 

*Goodman & Associates, Norman L. Smith*, for appellant.
*Porter & Barrett, J. Alexander Porter, Simuel F. Doster, Jr.*, for appellee.